Minute Order Form (06/97)


JS-6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4143 | **DATE** | 7/2/2002 |
| **CASE TITLE** | Adrian Velez vs. Terry Hillard | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  **Enter MEMORANDUM, OPINION AND ORDER: We grant the summary judgment of defendant Terry Hillard [27-1] and deny the motion for summary judgment of plaintiff Adrian Velez [26-1]. Therefore, judgment is granted in favor of the defendant. Defendant's motion to strike [29-1] is denied as moot in light of this opinion. This is a final and appealable order.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUL 0 8 2002 | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 36 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | | |
| | Copy to judge/magistrate judge. | CLERK | | |
| TSA | courtroom deputy's initials | 02 JUL -3 AM 8:41 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ADRIAN VELEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 00 C 4143 **DOCKETED** |
| vs. ) | |
| ) | Judge Andersen **JUL 0 8 2002** |
| TERRY HILLARD, Individually and in ) | |
| his official capacity as superintendent of ) | |
| police, ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the cross motions of plaintiff, Adrian Velez, and defendant, Terry Hillard, in his individual capacity and as superintendent of police, for summary judgment pursuant for Fed.R.Civ.P. 56. For the following reasons, we deny plaintiff's motion for summary judgment and grant defendant's motion for summary judgment.

## BACKGROUND

On September 2, 1997, plaintiff Adrian Velez was appointed to the position of probationary Chicago Police Officer. Probationary Police Officers (PPOs) must serve a one-year probationary period before they obtain the status of "career service" officers.

According to Education and Training Division Special Order 97-18 (Order 97-18), the one-year probationary period consists of two phases: the Basic Training Phase and the Field Training/Evaluation Phase. In addition, Order 97-18 states that PPOs are entitled to a maximum of twelve days of leave for sickness or non-duty injury during their probationary period. PPOs who are injured during their Basic Training Phase are entitled

36

to a period of leave or "medical time" not to exceed six months from their date of appointment. In some cases, such PPOs may be granted a waiver that adds up to ninety days to the "medical time." In either case, PPOs who are absent for more than twelve days during their probationary period will have their probationary periods extended to make up for the time. PPOs must complete one year, or 364 days, of active duty before they are made "career service" officers.

On April 10, 1998, while off duty, plaintiff went to a night club with two friends. That night, plaintiff was involved in an incident that resulted in a complaint being filed against him. Ultimately, the Chicago Police Department conducted an internal investigation of the night's events.

On June 9, 1998, plaintiff was injured on duty when he engaged in a foot chase and tackled an offender. During the course of the apprehension, plaintiff sustained a broken hand. Granted "injured on duty" status, plaintiff was carried on the medical roll from June 9, 1998 until September 8, 1998, approximately ninety-one days.

On July 29, 1998, during the time he was injured on duty status, plaintiff received the charges and allegations against him resulting from the incident on April 10 as well as his administrative proceedings rights. Before July 29, 1998, plaintiff claims he was not aware that there were charges brought against him.

Terry Hillard, defendant in this case, was the Superintendent of the Chicago Police Department at all times relevant to this action. As Superintendent, defendant had the authority to institute charges against non-probationary Chicago Police Department employees, impose disciplinary action against probationary and non-probationary Chicago Police Department employees, and summarily discharge probationary

employees. As Superintendent, defendant did not have the authority, however, to make determinations as to whether or when a PPO has satisfied his probation and achieved career service status. Such authority rests with the City of Chicago, Department of Personnel. Accordingly, the Department of Personnel notifies the Chicago Police Department when a probationary police officer achieves career status.

On August 14, 1998, while plaintiff was still on injured on duty status, defendant issued Chicago Police Department Personnel Order 98-79 (Order 98-79) which transferred Velez from his "recruit training" assignment to an assignment with the 7th District. Order 98-79 stated that its effective date was August 20, 1998 for operational purposes and on September 1, 1998 for payroll purposes. Also transferred to assignments in the Patrol Division (Districts 1 through 25) of the Chicago Police Department were plaintiff's classmates from recruit training as well as other employees. Plaintiff contends that Order 98-79, which transferred him from recruit training to the 7th District, in effect, transferred him from a PPO to a career status police officer.

On September 9, 1998, plaintiff had recovered enough to resume his duties at work. He was assigned to work "detail" at Comisky Park and was not assigned a supervisor. Plaintiff worked detail for a couple of days.

On September 13, 1998, plaintiff claims that he received a phone call from a colleague at the 7th District who advised him that next to his name on the work assignment sheet for September 14, 1998 appeared the designation "PPO"-- the designation for probationary police officer. The next day, plaintiff called the officer who was assigned as district secretary to the commander of the 7th District to inquire about his status. Plaintiff claims that the secretary told him that the office had received no

information concerning any change in plaintiff's status.

Also on September 14, 1998, after speaking with the secretary at the 7th District, plaintiff called Officer Tapia, the patrol specialist/ field training officer liaison assigned to the Chicago Police Academy, to inquire about his status. Plaintiff claims that Officer Tapia told him that he knew nothing about plaintiff's probation being extended and had not received any documentation indicating such. Plaintiff reported to the 7th District for duty.

On September 14, 1998, plaintiff was discharged after an internal investigation concluded that he had broken a Chicago Police Department rule prohibiting intoxication while on or off duty. He was summarily discharged without a hearing before the Police Board.

After his termination, plaintiff contacted the Fraternal Order of Police Chicago Lodge No. 7 (FOP). At no time, however, did he file a grievance with the FOP.

## PROCEDURAL HISTORY

On July 10, 2000, plaintiff filed a complaint in this court against defendants the City of Chicago and Terry Hillard, individually and in his official capacity as Superintendent of the Chicago Police Department. Plaintiff alleges that defendants are subject to liability pursuant to 42 U.S.C. § 1983 for two reasons. First, plaintiff alleges that his right to due process was violated when he was discharged without a hearing (Count I). Second, plaintiff alleges that his right to equal protection was violated because the defendants did not extend the probationary period to other officers who were injured or absent during the probationary period (Count II). In other words, plaintiff

claims that he was treated differently than similarly situated officers.

On March 22, 2001, this court dismissed Count I (due process claim) against the City of Chicago and Count II against both defendants (equal protection claim). Therefore, only the due process claims remains against defendant Hillard.

The parties have now filed cross motions for summary judgment concerning the remaining due process claim against defendant Hillard. For the reasons set forth below, we deny plaintiff's motion for summary judgment and grant defendant's motion for summary judgment.

## DISCUSSION

I. Legal Standards

Under Federal Rule of Civil Procedure 56(c), a trial judge must grant summary judgment if the evidence offered demonstrates that "there is no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505 (1986). The moving party initially must inform the court of the basis for its motion and identify "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that the movant believes demonstrate the absence of a genuine issue of material fact. *Celotex Corporation v. Catrett*, 477 U.S. 317, 333, 106 S.Ct. 2548 (1986) (quoting Federal Rule of Civil Procedure 56(c)); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153, 90 S.Ct. 1598 (1970). A "genuine" factual issue is one that properly can be resolved only by a finder of fact because it may reasonably be resolved in favor of either side. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material. Only disputes over

facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. 2505.

In assessing whether there are any factual issues to be tried, a court must view the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993 (1962) (per curiam). If the nonmovant's evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249-50, 82 S.Ct. 993.

Guided by these standards, we will proceed to determine whether either party is entitled to judgment under the applicable law.

II. Analysis

    A. Plaintiff's Motion for Summary Judgment

Plaintiff contends that defendant Hillard, acting under color of state law, deprived him of his due process rights when he terminated his employment with the Chicago Police Department on September 14, 1998 without a hearing before the Police Board. Central to his claim is plaintiff's assertion that he was a non-probationary "career service" police officer at the time he was discharged and, thus, had a property interest in his job which entitled him the right to a hearing before the Board.

Plaintiff concedes that PPOs are not subject to the rights, privileges, or benefits of the collective bargaining agreement between the Chicago Police Department and the FOP and may be terminated without a hearing before the Board. In addition, plaintiff concedes that PPOs are required to complete a one-year probationary period before they are eligible

to become "career service" police officers. Moreover, plaintiff grants that a PPO may not be absent for more than twelve (12) days during his or her probationary period, for any reason, without such time being added to the probationary period, extending it beyond one year.

Plaintiff began work as a PPO on September 2, 1997. On June 9, 1998, while he was still within his probationary period, plaintiff broke his hand on duty. He was put on injured on duty status so that he could recover. Plaintiff remained on injured on duty status for approximately ninety-one days, until September 9, 1998.

Despite the fact that he missed ninety-one days during his probationary period, plaintiff contends that he was transferred from the post of PPO to non-probationary career service police officer during that time. Plaintiff points to three facts to support this contention. First, plaintiff argues that Order 98-79, released on August 14, 1998 while he was still on injured on duty status, demonstrates that he was transferred from probationary status to non-probationary career service because it transferred him from "recruit training" to the 7th District. Second, plaintiff contends that, when he returned to work on September 9, 1998, he was detailed to Comisky Park where he worked for two days without supervision. He contends that PPOs are required to be supervised and because he was not, he was a career service police officer. Third, plaintiff asserts that three telephone conversations he had between the evening of September 13, 1998 and the time he was discharged on September 14, 1998 prove that he had attained career service status.

In response to these contentions, defendant argues first that Order 98-79 is the type of document used to alert Chicago Police Department employees to the new locations where they will perform their duties. Second, defendant asserts that, although

plaintiff worked his field assignment without supervision, he cites to no rule, regulation, or other evidence demonstrating only career service officers may work such assignments without supervision. Third, defendant argues that the conversations plaintiff relays are not proof that he had attained career service. The fact that the people with whom he spoke were not aware if his probation had been extended is not dispositive of his career status. Further, defendant asserts that such conversations are hearsay and would be inadmissible in a trial.

In this case, plaintiff must provide evidence demonstrating that he had attainted career service at the time he was terminated, thereby affording him the right to a hearing before the Police Board. The evidence he proffers, however, is insufficient concerning this element of his claim. Although the plaintiff attaches Order 98-79 to his motion, the document does not clearly indicate that plaintiff was transferred from PPO to career service. In fact, the order designates plaintiff as an "H" which the key on the last page of the document indicates means "PPO." Plaintiff provides no evidence that PPOs must be supervised during field training. Finally, even if the conversations plaintiff relays do not constitute inadmissible hearsay, they do not serve as proof of his career service status. They merely indicate that the people with whom plaintiff spoke did not know, and had not received, information about whether plaintiff's probation had been extended. Plaintiff has not shown that he was transferred from a PPO to a career service police officer. Accordingly, he cannot show that his due process rights were violated when he was discharged without a hearing before the Police Board. Thus, his motion must be denied.

B. Defendant's Motion for Summary Judgment

Defendant contends that when he terminated plaintiff's employment on September 14, 1998, plaintiff was a PPO, had no property interest in his employment, and, thus, was not entitled to a hearing before the Police Board. To support his assertion, defendant points to the applicable ordinances and Chicago Police Department regulations that govern PPOs. First, PPOs serve a one-year probationary period. Second, a PPO's probationary period is extended by the number of days of work he misses during the probationary period in excess of twelve (12) days. Defendant notes that plaintiff acknowledges these policies and admits that, during his probationary period, he was absent for more than twelve (12) days and that, as a result, his probationary period should have been extended.

Regardless of these admissions, plaintiff contends that Order 98-79 transferred him from probationary status to non-probationary career service. In response to this contention, defendant provides two reasons that Order 98-79 did not bestow career service on plaintiff. First, Order 98-79 transferred plaintiff from one assignment to another. Second, as a matter of local law, as superintendent and the person who issued the order at issue, defendant submits that he has no authority to grant plaintiff, or any PPO, career service. Such authority lies with the City of Chicago Commissioner of Personnel. Thus, defendant simply could not have transferred plaintiff from probationary status to career service status.

The question whether plaintiff was a PPO or a career service officer at the time he was discharged from duty is a question of law. Applying the facts of plaintiff's situation to the rules and regulations established by the City, it is clear that plaintiff was a PPO

when he was terminated. As a PPO, plaintiff had no property interest in his employment. *See Fontano v. City of Chicago*, 820 F.2d 213, 215 (7th Cir. 1987) (ruling that City of Chicago probationary employees do not have property rights in their jobs). Thus, plaintiff was not entitled to a hearing before the Police Board.

For these reasons, we find that plaintiff has failed to establish that defendant's conduct violated the Fourteenth Amendment to the Constitution and 42 U.S.C. § 1983. Therefore, we grant defendant's motion for summary judgment.

II. Motion to Strike

Defendant filed a motion to strike the portions of the record pertaining to the alleged telephone conversations plaintiff had with Chicago Police Department employees on September 13 and 1, 1998. Defendant asserts that because such conversations are hearsay, plaintiff cannot rely on them to support his motion for summary judgment. (*See* Def. Mot. To Strike, at 3). Because we grant defendant's motion for summary judgment, the motion to strike is moot.

## CONCLUSION

For the foregoing reasons, we grant the motion for summary judgment of defendant Terry Hillard (# 27) and deny the motion for summary judgment of plaintiff Adrian Velez (# 26). Therefore, judgment is granted in favor of the defendant. Defendant's motion to strike (# 29) is denied as moot in light of this Opinion.

This is a final and appealable order.

Wayne R. Andersen
United States District Judge

Dated: July 2, 2002